UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

THADDEUS SHORTZ,
*Inmate Identification No.* 447-109,

    Plaintiff,

v.

WARDEN RICHARD DOVEY,
ASST. WARDEN STEVEN MYERS,
LT. MARK. CRILLY and
OFC. ERNEST SHOEMAKER,[1]

    Defendants.

Civil Action No. TDC-17-2364

## MEMORANDUM OPINION

Thaddeus Shortz, an inmate now confined at Jessup Correctional Institution ("JCI") in Jessup, Maryland, has filed a civil action against Maryland Correctional Training Center ("MCTC") personnel Warden Richard Dovey, Assistant Warden Steven Myers, Lieutenant Mark Crilly and Officer Ernest Shoemaker for allegedly confiscating his personal wheelchair on two occasions as punishment and thereby limiting his ability to obtain meals, showers, and use the toilet. Shortz claims that these actions violated his rights under the Eighth Amendment of the United States Constitution and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213 (2012). Presently pending before the Court are Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 17, and Shortz's Motion to Amend the Complaint and for an Injunction, ECF No. 26. Upon review of the submitted materials, the

---

[1] The Clerk shall amend the docket to reflect the proper titles and full names of Defendants.

Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion is GRANTED, and Shortz's Motion is DENIED.

## BACKGROUND

Shortz lost his lower right leg in 2008 as a result of a motorcycle accident. He has a prosthetic leg, but at times he has not been able to use it when the neoprene knee sleeve used to hold it in place was worn out. Shortz can also move about using crutches. While he was housed at MCTC, between May 2, 2016 and September 7, 2016, Shortz also used a personal wheelchair prescribed for him by a doctor at Walter Reed Army Medical Center.

### I. Wheelchair

On August 10, 2016, MCTC medical staff evaluated Shortz's needs and ordered a toilet handrail and a new neoprene sleeve. On August 28, 2016, however, Shortz was placed in administrative segregation. At the time of the move, correctional staff noted that he had no paperwork authorizing him to have his personal wheelchair and that he frequently walked around without it. As a result, Shortz's wheelchair was taken away, and Dr. Reilly of the MCTC medical staff ordered crutches for Shortz.

On August 29, 2016, Shortz filed an Administrative Remedy Procedure grievance ("ARP") regarding the confiscation of his wheelchair, which he refers to as a "Quickie Wheelchair." ARP No. MCTC-1082-16 at 1-2, Mot. Dismiss Ex. 3, ECF No. 17-5. According to Shortz, based on instructions from Dr. Reilly of the MCTC medical staff, Lt. Draper authorized correctional officers, including Officer Shoemaker, to confiscate the wheelchair. He alleged that the confiscation violated the ADA. On August 30, 2015, the wheelchair was returned to Shortz by medical staff.

2

On August 31, 2016, Shortz was seen by Physician Assistant Lori Slavick, who noted that he was having a difficult time walking long distances and could not wear the neoprene sleeve for his stump. As a result, a state-issued wheelchair was ordered for Shortz. Shortz's mother was contacted to send a new neoprene sleeve. On September 2, 2016, Shortz received a neoprene stump cover, a neoprene sleeve, and prosthetic socks from his family. That same day, Lt. Crilly re-confiscated the Quickie Wheelchair, which was returned to Shortz's family. On September 7, 2016, Shortz was transferred to JCI, where he was issued a wheelchair and was permitted to be fed in his cell due to his impaired mobility.

On September 6, 2016, Shortz filed a second ARP, No. MCTC-1095-16, in which he complained about the re-confiscation of his personal wheelchair on September 2. On September 29, 2016, the Warden dismissed the ARP on the grounds that personal wheelchairs are not permitted and that Shortz received a state-issued wheelchair and crutches.

On September 6, 2016, Shortz filed ARP No. MCTC-1096-16, in which he complained that there were no disability rails around his toilet at MCTC. The ARP was dismissed due to the failure to provide names of the relevant staff and how they responded to any complaints about the lack of handrails. Although Shortz was granted until September 21, 2016 to submit additional information, he failed to do so.

On October 19, 2016, the Warden dismissed Shortz's August 29, 2016 ARP, noting that Shortz had no paperwork authorizing him to have his Quickie Wheelchair, that it was returned to his family, and that Shortz had been provided crutches and a state-issued wheelchair for use outside his cell. On November 1, 2016, Shortz appealed the ruling to the Commissioner of Correction, arguing that he did not receive a timely response from the Warden, that the response did not address his ADA claim, that the need for personal wheelchair paperwork was not

addressed upon his arrival at MCTC, and that the wheelchair confiscation stemmed from an issue that arose with his mother during a visit. The Commissioner found Shortz's appeal to be meritorious in part in that the Warden's response was untimely, but concluded that "the warden fully addressed your complaint" such that no further action or remedy was warranted. ARP Appeal MCTC-1082-16 at 18-20, Mot. Dismiss Ex. 3, ECF No. 17-5. On December 12, 2016, the Commissioner dismissed Shortz's appeal of the September 6, 2016 ARP (MCTC-1095-16) as repetitive of the appeal in MCTC-1082-16. Shortz did not appeal these decisions to the Inmate Grievance Office.

On August 17, 2017, Shortz filed his Complaint in this case in which he seeks compensatory and punitive damages totaling $550,000 and the return of his personal wheelchair. On May 29, 2018, Shortz filed a Motion to Amend the Complaint and for an Injunction in which he asserts that during a temporary housing assignment at MCTC on March 29 and 30, 2018, he was placed in a cell that did not have handrails to accommodate his disability and was thus deprived of access to the toilet and bed. He requests an injunction barring his placement in a cell that does not comply with the ADA. Although Shortz had filed an ARP, No. JCI-0292-18, relating to this incident, it was dismissed on April 10, 2018 because he failed to include the names of the staff involved in the incident and the times of their shifts. Although he was given until April 25, 2018 to submit such information, Shortz did not resubmit his ARP with that information.

## DISCUSSION

### I. Motion to Dismiss or, in the Alternative, for Summary Judgment

In their Motion, Defendants seek dismissal of the Complaint or summary judgment in their favor on several grounds, including that: (1) the State of Maryland is immune from suit

under the Eleventh Amendment; (2) Shortz failed to exhaust his administrative remedies; (3) the Warden and Assistant Warden are not personally liable for Shortz's alleged injuries; (4) Shortz was not denied appropriate medical care; (5) Shortz fails to state an ADA claim; and (6) Defendants are entitled to qualified immunity.

### A. Legal Standard

Defendants have filed their Motion as a Motion to Dismiss, or, in the Alternative, for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011). Where

Shortz has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter, and has instead submitted a declaration with his Opposition to the Motion, the Court will construe the Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. Eleventh Amendment

Defendants argue that Shortz's claims against MCTC must be dismissed under the Eleventh Amendment. The Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, see Md. Code Ann., State Gov't §12-202(a) (2015), it has not waived its immunity under the Eleventh Amendment to a suit of this kind in federal court.

The Court does not read Shortz's Complaint as naming the State of Maryland or the Maryland Correctional Training Center as a party. However, to the extent the Complaint can be construed as asserting claims against MCTC or Defendants in their official capacities, they are protected from such suit under the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 101–02. Thus, any claim for monetary damages against Defendants in their official capacities is barred by the Eleventh Amendment.

### C. Exhaustion of Administrative Remedies

Defendants assert the failure to exhaust administrative remedies as an affirmative defense. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). A prisoner's failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of proving that the prisoner had available remedies but failed to take advantage of them. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This exhaustion requirement serves a valuable function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*,

549 U.S. at 219. Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). In Maryland prisons, the Administrative Remedy Procedure is the administrative process that must be exhausted. First, a prisoner must file an ARP with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. ("COMAR") §§ 12.07.01.04–05.A. (2017). Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.07.01.05.C. If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210.

Defendants have provided documentation establishing that Shortz did not complete the ARP process. After his personal wheelchair was confiscated on August 28, 2016, Shortz filed ARP No. MCTC 1082-16. The ARP was dismissed on October 19, 2016. Shortz appealed the decision to the Commissioner of Correction, who agreed that the Warden had not timely responded to the ARP, but otherwise denied the appeal. Shortz did not seek review of this decision by the IGO.

8

Shortz's second ARP relating to the confiscation of his wheelchair, No. MCTC 1095-16, was dismissed on September 29, 2016. Shortz's appeal to the Commissioner of Correction was dismissed as repetitive of No. MCTC-1082-16. Shortz did not appeal that decision to the IGO.

Finally, Shortz filed an ARP relating to the lack of handrails in his cell, but when it was dismissed with a request that he submit additional information, he neither resubmitted his ARP with the requested information nor appealed the dismissal.

Because Shortz did not appeal the dismissals of his ARPs up through the IGO, he failed to exhaust administrative remedies. Accordingly, his claims must be dismissed.

## II. Motion to Amend the Complaint and for an Injunction

On May 29, 2018, two months after the Motion for Summary Judgment was fully briefed, Shortz submitted correspondence and an attached ARP form, dated April 4, 2018, which the Court construes as a Motion to Amend the Complaint. Shortz claims that on March 29 and March 30, 2018, during transportation between prisons, he was placed in a cell at MCTC that lacked handrails, such that he was denied "proper ADA access to a toilet and bed." ARP No. JCI-0292-18 at 1, Mot. Amend Ex. 1, ECF 27. As relief, Shortz seeks an injunction barring corrections officials from "placing ... Shortz in a non-ADA equipped housing assignment, while this case is in this Court." Mot. Amend at 1, ECF No. 26.

Although the Court "should freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend may be denied where the proposed amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile. *See Equal Rights Ctr. v. Niles Bolton Assoc.*, 602 F.3d 597, 603 (4th Cir. 2010). A proposed amendment is prejudicial to the opposing party if it is belated and would change the nature of the litigation. *Id.* at 604; *see Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987).

9

The underlying Complaint sought to address disability accommodations at MCTC during a nine-day period between August 28 and September 7, 2016, during which Shortz was housed in administrative segregation. The primary focus of Shortz's initial complaint dealt with mobility issues and whether he could retain a personal wheelchair. A two-day temporary placement at MCTC 18 months later, during which Shortz was placed in a cell without handrails to assist his transfer to a bed and toilet, is at best tangentially related to his initial allegations. Where there has been no allegation that Defendants were directly involved in the later placement, the Court finds that it would be prejudicial to Defendants, at this stage of the case, to add the new claims. Moreover, Defendants have demonstrated that Shortz has not completed the ARP process, including appeals all the way up to the IGO, for his allegations relating to the 2018 incident. Absent exhaustion of administrative remedies, the claim would necessarily fail. Thus, Shortz's request to amend the Complaint will be denied as futile.

Although Shortz does not explicitly request a preliminary injunction, based on his request for an injunction "while this case is in this Court," Mot. Amend at 1, the Court will consider whether a preliminary injunction is warranted. To obtain a preliminary injunction, moving parties must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). A moving party must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Because a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

As discussed above, Shortz's claim is futile because he did not exhaust administrative remedies. Accordingly, he has not demonstrated a likelihood of success on the merits. Moreover, because "absent extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons," *Taylor v. Freeman,* 34 F.3d 266, 268 (4th Cir. 1993), the balance of equities and the public interest, based on the present record, do not favor an preliminary injunction. Although it is clear that correctional officials generally should place Shortz in cells designed to accommodate persons with disabilities, Shortz has not made the requisite showing to warrant a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is granted, and Shortz's Motion to Amend the Complaint and for an Injunction is denied. A separate Order shall issue.

Date: August 9, 2018

THEODORE D. CHUANG
United States District Judge